**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**GLORIA G. HARRIS,**

      **Plaintiff,**

**v.**                                    **Civil Action No. 2:04cv545**

**DONALD H. RUMSFELD,**
**Secretary, Department of Defense,**

      **Defendant.**


## OPINION AND ORDER


Plaintiff Gloria G. Harris claims that she was victimized by unlawful racial discrimination when her employer, the Defense Finance and Accounting Service (DFAS), deliberately "sabotaged" her opportunity for a promotion by forcing her to wait approximately fifteen (15) minutes before beginning the selection interview. She subsequently filed this pro se action, alleging that DFAS racially discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Harris seeks $6,300,000.00 in damages.

The matter is now before the Court on defendant Rumsfeld's Motion for Summary Judgment. (Docket No. 9.) For the reasons stated below, the Court **GRANTS** the motion.

I.  Factual and Procedural History[1]

Harris, an African-American woman, has been employed by DFAS in its Norfolk, Virginia office since 1989.  DFAS is an agency of the United States Department of Defense.  Throughout her employment with DFAS, Harris held various positions and served "collateral duty" as an Equal Employment Opportunity (EEO) counselor.  She is currently employed as a Lead Accounting Technician in the Vendor Pay Services Branch of DFAS.  She has held that position since May 2001.

In May 2002, Harris applied for a promotion to one of two Supervisory Accounting Technician (SAT) positions that became available at DFAS.  Out of eight applicants for the SAT position, six, including Harris, were rated as "qualified" and referred to an interview panel for further consideration as "competitive applicants."  Candidates for the SAT positions were to be chosen based solely on applicant performance during the interview session.

The applicants with the two highest overall interview scores would be referred for approval to Richard O. Helms, Director of Navy Vendor Pay Support.  Helms is a Caucasian male.  Because

---

[1]In deciding the Motion for Summary Judgment, the Court must view the facts, and the inferences reasonably drawn from those facts, in the light most favorable to Harris.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Smith v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004); Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).

Helms was not the local site manager at the DFAS' Norfolk office, he was unaware of Harris' race or the employment position that she held.  (Helms Affidavit at p.1.)

The interview panel was composed of three members.  Larry M. Johnson, an African-American male, was a Supervisory Accountant and Vendor Pay Branch Manager.  As chairperson of the interview panel, Johnson determined the questions that would be asked of each applicant and developed a system to score the applicants' responses.  Another panel member, Barbara Stewart, an African-American female, was employed in a SAT position.

The third panel member, Deborah L. Ayres, is a Caucasian female.  During the two years preceding Harris' interview, Ayres served as Harris' immediate supervisor.  Ayres "always" gave Harris "either outstanding or highly successful evaluations" because, according to Ayres, Harris "was and is a good technician."  (Ayres Affidavit at p.1.)

It was Ayres' promotion from the SAT position to a Financial Specialist position that created one of the openings for which Harris applied.  A few weeks prior to the interview, Harris congratulated Ayres on her promotion.  When Harris informed Ayres that she might apply for the SAT position, Ayres responded, "If I were you, I wouldn't want my job."

Although Harris arrived for her interview at the appointed time, the interview did not begin precisely on schedule.  Panel member Stewart was not present in the conference room where the interview was to be conducted.  Harris sat alone in the

conference room with Ayres for approximately fifteen (15) minutes
while Johnson went to locate Stewart.  During the delay, Harris
and Ayres did not speak to each other.  While some other
candidates had to wait for nearly thirty (30) minutes after the
scheduled start time for their interviews to begin, Harris
apparently was the only applicant who waited in the interview
room with a panel member.

The fifteen (15) minute delay, coupled with waiting alone in
a room with her former supervisor and current panel member,
unnerved Harris and negatively impacted her performance during
the interview.  According to Harris, it was difficult for her to
be alone in the interview room with Ayres.  Harris explained:

> It wasn't with [Ayres] personally.  It was the
> situation.  You know, you go into an interview, you go
> there –- I was nervous before I even got there.  And
> then when that happened, I was really hysterical almost
> because the people weren't there.  It's like, why
> didn't they call me.  Somebody should have called me
> and told me to come down later.  That's how I felt
> about that.
>
> I shouldn't have been made to sit in front of her
> because it's different to be sitting in front of her
> rather than be outside a room by myself waiting.  I
> could deal with that better instead of sitting in front
> of one of the [panel members].  That was very hard.
>
> . . . .
>
> I didn't know what was going on.  Then when
> [Johnson] left to look for [Stewart], I didn't know how
> long I would be waiting or anything like that.  But the
> fact that I had just the wait itself, it really took a
> lot out of me because I was ready to go ahead and do
> whatever we had to do.  If it had been organized to
> begin with I could have just gone on and answered their
> questions and done what they had to do right at that
> time.  I was the only one made to wait . . . that
> length in front of somebody. . . . . Everyone else, if

4

their interview was delayed, they were waiting outside
of the room.  It wasn't the same situation as mine.

(Harris Dep. at 33-34.)

Harris further described her performance during the
interview:

I kind of lost my train of thought.  I was at a
loss for words.  Some of the questions I may have been
able to answer and didn't answer, but I –- what was
running through my mind was, why did this happen to me.
That was what was running through my mind.

(Harris Dep. at 36.)  Harris stated that Johnson's instructions
to her at the beginning of the interview went "in one ear and out
the other."  (Harris Dep. at 39.)  She claimed that her mind was
"almost blank" during the interview and that she would have
performed better had she been advised to wait a few minutes
before proceeding to the conference room.  (Harris Dep. at 37.)

The panel members agreed with Harris' self-assessment that
she performed poorly during the interview.  They ranked Harris
fifth (5th) out of the six applicants who were interviewed.
According to Johnson, Harris' overall evaluation score was "at or
below average."  Johnson explained that Harris appeared
unprepared for the questions asked during the interview and "[a]t
times she looked at the ceiling or around the room."  Further,
Johnson noted that Harris failed to elaborate concerning her
professional assets and achievements.  (Johnson Affidavit at
p.1.)

Stewart recalled that Harris gave brief answers to the
questions posed to her and that she received lower scores for her

answers to "supervisory type questions."  Stewart had the
impression that if Harris had "elaborated and provided more
information, she would have scored higher."  (Stewart Affidavit
at p.1.)  Ayres believed that Harris need to improve her
knowledge in certain areas, including cash management,
supervision concepts, and employee training.  (Ayres Affidavit at
p.1.)

Kelly M. Wilson and Rayna J. Parsons, both Caucasian
females, received the two highest overall scores from the
interview session.  The panel recommended them to Helms for
promotion.  After reviewing the panel's evaluations sheets for
consistency, quality, and strength of the applicants' responses,
Helms adopted the panel's recommendation.

In July 2002, DFAS sent Harris a letter informing her that
she was not selected for the promotion and that Wilson and
Parsons were chosen instead.  The letter explained that the
"[c]andidates selected were chosen based on past experience and
demonstrated supervisory, organizational and/or training skills."

Harris filed a formal Equal Employment Opportunity
Commission (EEOC) charge alleging that DFAS unlawfully
discriminated against her when it failed to promote her to the
SAT position.  Following an administrative proceeding, the EEOC
administrative law judge ruled in favor of DFAS.  Harris now
seeks relief in this Court.

## II.  Principles of Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).  A court "must take special care" when considering a summary judgment motion in an employment discrimination case because the employer's "motive is often the critical issue."  Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996); Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). Nevertheless, summary judgment remains an appropriate disposition when the plaintiff is unable to prevail on his or her

---

[2]Because the principles of summary judgment are well-established, further elucidation of those principles need not be provided here.  See Garrow v. Economos Props., Inc., 406 F. Supp. 2d 635, 638-39 (E.D. Va. 2005) (providing detailed description of summary judgment principles); Taylor v. Wal-Mart Stores, Inc., 376 F. Supp. 2d 653, 657-58 (E.D. Va. 2005) (same); Puckett v. City of Portsmouth, 391 F. Supp. 2d 423, 430-31 (E.D. Va. 2005) (same).

discrimination claims as a matter of law.  <u>Beall</u>, 130 F.3d at
619; <u>Evans</u>, 80 F.3d at 958-59.


### III.  Analysis


A plaintiff proceeding under Title VII of the Civil Rights
Act of 1964 may prove his or her case in one of two ways.  <u>See</u>
<u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 318
(4th Cir. 2005); <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>,
354 F.3d 277, 284 (4th Cir. 2004); <u>EEOC v. Clay Printing Co.</u>, 955
F.2d 936, 940 (4th Cir. 1992); <u>Goldberg v. B. Green & Co.</u>, 836
F.2d 845, 847-48 (4th Cir. 1988).  First, he or she may establish
a claim for discrimination "under the ordinary standards of proof
by direct or indirect evidence relevant to and sufficiently
probative of the issue."  <u>Clay Printing Co.</u>, 955 F.2d at 940; <u>see</u>
<u>also</u> <u>Diamond</u>, 416 F.3d at 318; <u>Hill</u>, 354 F.3d at 284; <u>Goldberg</u>,
836 F.2d at 847.

Alternatively, a Title VII plaintiff may proceed under the
burden-shifting framework established by the United States
Supreme Court in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S.
792 (1973).  <u>See</u> <u>Diamond</u>, 416 F.3d at 318; <u>Hill</u>, 354 F.3d at 285;
<u>Clay Printing Co.</u>, 955 F.2d at 940; <u>Goldberg</u>, 836 F.2d at 847.
Because Harris has not presented evidence of discriminatory
intent, the Court will examine her claims of discrimination using

the <u>McDonnell Douglas</u> burden-shifting framework.[3]  <u>See</u> <u>Hill</u>, 354
F.3d at 284-85; <u>Thompson</u>, 312 F.3d at 649; <u>Brinkley</u>, 180 F.3d at
606-07; <u>Puckett v. City of Portsmouth</u>, 391 F. Supp. 2d 423, 431
n.2 (E.D. Va. 2005).

<u>A.  Failure to Promote</u>

To prevail on her disparate treatment claim of failure to
promote, Harris ultimately must prove that she was treated less
favorably than the other applicants because of her race.  <u>See</u>
<u>Anderson v. Westinghouse Savannah River Co.</u>, 406 F.3d 248, 268
(4th Cir. 2005); <u>Carter v. Ball</u>, 33 F.3d 450, 456 n.7 (4th Cir.

---

[3]Under the <u>McDonnell Douglas</u> framework, a plaintiff
asserting a claim under Title VII has the initial burden to prove
a <u>prima</u> <u>facie</u> case of discrimination by a preponderance of the
evidence.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802; <u>see also</u>
<u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 50 (2003); <u>St. Mary's
Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993); <u>Mackey v. Shalala</u>,
360 F.3d 463, 468 (4th Cir. 2004).
   Once the plaintiff establishes a <u>prima</u> <u>facie</u> case, the
burden shifts to the defendant to articulate a "legitimate,
nondiscriminatory reason" for the defendant's employment action.
<u>McDonnell Douglas Corp.</u>, 411 U.S. at 802; <u>see also</u> <u>Raytheon Co.</u>,
540 U.S. at 50; <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 506-07;
<u>Mackey</u>, 360 F.3d at 468.  If the defendant meets this burden,
then "the presumption raised by the prima facie case is rebutted"
and the presumption "drops from the case."  <u>St. Mary's Honor
Ctr.</u>, 509 U.S. at 507 (quoting <u>Tex. Dep't of Cmty. Affairs v.
Burdine</u>, 450 U.S. 248, 255 & n.10 (1981)); <u>see also</u> <u>Mackey</u>, 360
F.3d at 468.  The plaintiff then must have a "full and fair
opportunity" to demonstrate, through the presentation of its own
evidence and the cross-examination of the defendant's witnesses,
that the defendant's proffered reason for its employment decision
was not the true reason, but was merely a pretext for
discrimination.  <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 507-08;
<u>Burdine</u>, 450 U.S. at 253, 255-56; <u>Hill</u>, 354 F.3d at 285; <u>see</u>
<u>Bryant v. Bell Atl. Md., Inc.</u>, 288 F.3d 124, 133 (4th Cir. 2002).
Although the <u>McDonnell Douglas</u> framework shifts the burden of
production between the parties, the plaintiff retains the
"ultimate burden" of persuasion.  <u>St. Mary's Honor Ctr.</u>, 509 U.S.
at 508; <u>Burdine</u>, 450 U.S. at 253; <u>see</u> <u>Hill</u>, 354 F.3d at 285.

1994).  To establish a <u>prima facie</u> case, Harris must show that
(1) she is a member of a protected group; (2) she applied for the
position in question; (3) she was qualified for that position;
and (4) she was rejected for that position under circumstances
giving rise to an inference of unlawful discrimination.  <u>See</u>
<u>Anderson</u>, 406 F.3d at 268; <u>Williams v. Giant Food Inc.</u>, 370 F.3d
423, 430 (4th Cir. 2004); <u>Lowery v. Circuit City Stores, Inc.</u>,
158 F.3d 742, 760 (4th Cir. 1998).

If Harris establishes a <u>prima facie</u> case, the burden then
shifts to Rumsfeld to articulate a legitimate, nondiscriminatory
reason for the decision to deny her the promotion.  <u>See</u> <u>Anderson</u>,
406 F.3d at 268; <u>Lowery</u>, 158 F.3d at 760.  Once Rumsfeld
articulates such a reason, the burden then shifts back to Harris
to prove that the articulated reason is a mere pretext for
discrimination.  <u>See</u> <u>Anderson</u>, 406 F.3d at 268; <u>Lowery</u>, 158 F.3d
at 760.

Harris may prove pretext by showing that she was "better
qualified" than the selected applicants or "by amassing
circumstantial evidence that otherwise undermines the
credibility" of Rumsfeld's stated reasons for the decision to
pass Harris over for the promotion.  <u>Heiko v. Colombo Sav. Bank,</u>
<u>F.S.B.</u>, 434 F.3d 249, 259 (4th Cir. 2006); <u>see</u> <u>Reeves v.</u>
<u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 146-49 (2000);
<u>Price v. Thompson</u>, 380 F.3d 209, 213-14 (4th Cir. 2004); <u>Dennis</u>
<u>v. Columbia Collection Med. Ctr, Inc.</u>, 290 F.3d 639, 648 n.4 (4th
Cir. 2002).  A <u>prima facie</u> case, coupled with probative evidence

that Rumsfeld's explanation is false, would counsel against
granting Rumsfeld summary judgment unless Rumsfeld presented
other strong evidence from which no reasonable factfinder could
conclude that there was discrimination.  See Price, 380 F.3d at
214.

In conducting its analysis, the Court must "assess relative
job qualifications based on the criteria that the employer has
established as relevant to the position in question."  Heiko, 434
F.3d at 259.  Harris "cannot establish her own criteria for
judging her qualifications for the promotion.  She must compete
for the promotion based on the qualifications established by her
employer."  Anderson, 406 F.3d at 269.  "'It is the perception of
the decision maker which is relevant,' not the self-assessment of
the plaintiff."  Evans, 80 F.3d at 960-61 (quoting Smith v. Flax,
618 F.2d 1062, 1067 (4th Cir. 1980); see also Beall, 130 F.3d at
620.

Finally, without evidence of pretext for discrimination, the
Court will refrain from acting as a "super-personnel department
that reexamines an entity's business decisions."  Id.; Garrow v.
Economos Props., Inc., 406 F. Supp. 2d 635, 642 (E.D. Va. 2005).
The crucial issue in a Title VII case is whether the employer has
an unlawfully discriminatory motive, not the wisdom or folly of
the employer's business judgments.  Jiminez v. Mary Wash. Coll.,
57 F.3d 369, 383 (4th Cir. 1995); Garrow, 406 F. Supp. 2d at 642.
Accordingly, without evidence of discriminatory intent, the Court
will "leave to the employer's discretion the method of evaluating

an employee's job performance."  Beall, 130 F.3d at 620.

1.  Harris' Prima Facie Case

Turning to the merits of the present action, Harris has satisfied the first two prongs of her prima facie case.  As an African-American woman, Harris clearly is a member of a class protected under Title VII.  There is also no dispute that she applied for the SAT position.  Further, Harris has satisfied the fourth prong because the SAT positions were filled by two Caucasian applicants.  See Lowery, 158 F.3d at 760; Carter, 33 F.3d at 458.

Rumsfeld argues that Harris cannot establish a prima facie case because she is unable to satisfy the third prong by showing that she was qualified for the SAT position.  However, during oral argument before this Court, Rumsfeld's counsel conceded that Harris was at least qualified "on paper" for that position.[4] Rumsfeld asserts that regardless of her "paper" qualifications, which "preliminarily qualified" Harris for further consideration, she was ultimately not fully qualified for the SAT position as a result of her low interview scores.

The Court need not determine whether Harris' "paper" qualifications are sufficient to satisfy the third prong of her prima facie case.  Assuming, without deciding, that Harris could

---

[4]In fact, the Applicant Notification Statement on Harris' application for the SAT position indicates that she was "Qualified" for the position, and her application was referred for further consideration.  Further, in his Reply Brief, Rumsfeld asserts that Wilson and Parsons were "at least as qualified" as Harris for the SAT positions.

indeed establish a _prima_ _facie_ case, her claim still fails as a
matter of law because she is unable to show that Rumsfeld's
proffered reason for her non-selection is pretextual.  Simply
put, Harris cannot escape from her own poor performance during
her interview.

### 2.  Rumsfeld's Rebuttal

Rumsfeld has rebutted Harris' _prima_ _facie_ case by asserting
that the selected applicants, Wilson and Parsons, were chosen
over Harris for the promotion because their interview scores were
higher than Harris' scores.  Harris cannot show that Rumsfeld's
proffered reason for not promoting her is "unworthy of credence."
See _Reeves_, 530 U.S. at 147; _Tex. Dep't of Cmty. Affairs v._
_Burdine_, 450 U.S. 248, 256 (1981); _Dennis_, 290 F.3d at 646.
Quite to the contrary, Harris' self-assessment of her interview
performance corroborates the ranking given to her by the panel
and supports Rumsfeld's claim that she performed poorly during
the interview session.[5]

### 3.  Harris' Efforts To Prove Pretext

Despite the undisputed evidence of Harris' poor interview
performance, she maintains that Rumsfeld's articulated reason for
denying her the promotion is a mere pretext.  Harris argues that
the interview panel deliberately "sabotaged" her opportunity for

---

[5]Clearly, DFAS was entitled to identify interview
performance as the criteria it would use to select the most
qualified candidates for promotion.  See _Evans_, 80 F.3d at 960
("Job performance and relative employee qualifications are widely
recognized as valid, non-discriminatory bases for any adverse
employment decision.").

the promotion and "preselected" Wilson and Parsons for the SAT positions based on improper racial motive.  Harris makes numerous contentions in support of her arguments, all of which are unfounded.

First, Harris contends that the panel members racially discriminated against her by delaying the start time of her interview for about a quarter of an hour and by unfairly evaluating her during the course of the interview.  Harris' contention is not supported by the record.  There is no evidence that the panel deliberately delayed the beginning of Harris' scheduled interview because of her race or for any other reason.  Other applicants were made to wait nearly twice as long as Harris prior to the start of their interviews.

Other than Harris' bald assertions and conclusory allegations, there is nothing in the record from which to infer that any of the panel members acted out of racial animus toward Harris.  Nor is there any evidence that Helms was motivated by race when he approved the panel's selection of Wilson and Parsons for the SAT positions.  Harris' unsubstantiated assertions and allegations are insufficient to defeat a summary judgment motion.  See Laber v. Harvey, 438 F.3d 404, 431-32 (4th Cir. 2006); Williams, 370 F.3d at 433; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Evans, 80 F.3d at 960.[6]

---

[6]Harris has submitted an unsworn statement by an African-American co-worker in which the co-worker opines that Johnson, an African-American, is "prejudice[d] against his own race" and "exhibits proudly the fact that he has disgust and has no respect

Harris also attempts to prove pretext by referring to the July 2002 letter informing her that she was not selected for the promotion. Specifically, Harris asserts that the letter provides a different reason for the selection of Wilson and Parsons than that articulated by Rumsfeld in the litigation. The Court finds no conflict between the two.

It is true that the letter states that the selectees "were chosen based on past experience and demonstrated supervisory, organizational and/or training skills." This statement, however, does not contradict Rumsfeld's claim that the final selectees were chosen solely on the basis of interview performance.[7] In order even to receive an interview, all applicants were required to have sufficient experience and to meet certain other

---

for the African-American race." As support for her statement, the co-worker claims, among other things, that Johnson once overlooked her for a promotion in favor of a less qualified applicant.

The co-worker's statement is not evidence that Johnson was motivated by race in his conduct toward Harris. Regardless of its dubious admissibility, the statement merely expresses the co-worker's personal opinion of Johnson and there is nothing in the record, other than unsubstantiated conclusory allegations, to identify the factual basis underlying that opinion. See Puckett, 391 F. Supp. 2d at 435 n.4; see also Wilder v. Southeastern Pub. Serv. Auth., 869 F. Supp. 409, 416 (E.D. Va. 1994).

[7]During her deposition testimony, Harris initially claimed that no one informed her of the extent to which her interview performance would be important to the selection process. (Harris Dep. at 51.) However, she did acknowledge her belief that interview performance was the "main factor" used to determine candidates for selection. (Harris Dep. at 51.) Harris later conceded that Johnson had in fact informed her at the beginning of her interview that candidates for the SAT positions would be selected based on their responses to questions posed during the interview. (Harris Dep. at 57.)

qualifications.  Only those applicants rated as "qualified" and "competitive" were referred to the interview panel for further consideration.  The purpose of the interview itself was to assess the relative skills of the applicants.  Hence, there is no conflict between the reasons stated in the letter and those articulated by Rumsfeld in defense of Harris' claims.

Harris' next attempt to prove pretext rests on the assertion that Wilson was not qualified for the SAT position because she did not meet the tenure requirement of 52 weeks employment at a grade of GS-6 or higher.  Harris contends that Wilson's alleged lack of requisite experience at the appropriate employment grade demonstrates that the panel preselected Wilson for the SAT position.  However, the record refutes Harris' contention and shows that Wilson met the requisite tenure requirement.  Wilson was employed at an employment grade of at least a GS-6 since March 2000, well over 52 weeks prior to her selection for the SAT position in July 2002.

Harris further claims that evidence of pretext can be found in Ayres statement to Harris, "If I were you, I wouldn't want my job."  Harris concludes that Ayres was attempting to communicate to her that she need not apply for the SAT position because the outcome was predetermined.

Harris' conclusion is based on nothing more than the sheerest of speculation.  If anything, Ayres' statement revealed dissatisfaction with her prior job.  In fact, in her affidavit, Ayres avers that she informed Harris and several others that she

16

did not want to go back to her previous position as a supervisor because she "had been in the position for almost 20 years and was ready for a change." (Ayres Affidavit at p.1.) Ayres' statement, without more, does not indicate any pretext on behalf of the defendant.

Harris contends that the low interview score that she received from Ayres is also evidence that Rumsfeld's articulated reason for her non-selection is pretextual. In making this contention, Harris relies on the fact that Ayres consistently gave Harris exceptional evaluations for her work performance during the two years preceding the interview. This argument ignores the fact that the selectees for the promotion were ultimately chosen on the basis of their interview performance, and it is undisputed that Harris performed poorly during her interview.

Harris' final argument of pretext is based on her allegation that DFAS secretly preselected the candidates to be promoted. There is simply no evidence in the record to support this allegation. Further, even if DFAS had preselected certain applicants for promotion, the evidence would still be insufficient to prove pretext. See Anderson, 406 F.3d at 271; Mackey v. Shalala, 360 F.3d 463, 468-69 (4th Cir. 2004). Such preselection would work to the detriment of all applicants, regardless of race. Anderson, 406 F.3d at 271; Blue v. U.S. Dep't of the Army, 914 F.2d 525, 541 (4th Cir. 1990). Accordingly, while the alleged preselection of Wilson and Parsons

may establish that Harris was not treated fairly, it alone does not prove that she was the victim of racial discrimination.  <u>See Anderson</u>, 406 F.3d at 271; <u>Blue</u>, 914 F.2d at 541.

In sum, Harris' claim of discrimination through failure to promote must fail.  She is unable to demonstrate that Rumsfeld's articulated justification for denying her the promotion is pretext for racial discrimination.  DFAS was well within its bounds to promote Wilson and Parsons, both of whom had higher interview scores than Harris.  Further, there is simply no evidence whatsoever in the record from which one could reasonably infer that race, or any other improper motive, was a factor in the promotion decision.

B.  Other Claims of Discrimination

In her Complaint and during oral argument before this Court, Harris raised numerous other claims of racial discrimination, including the assertions that she was denied opportunities for additional training and that she was not given a promised larger office space.  Harris also claims that DFAS retaliated against her after she made her EEO complaint by, among other things, appointing Wilson as Harris' immediate supervisor and denying Harris promotion opportunities on twelve separate occasions.

Most of these alleged incidents of discrimination occurred after Harris submitted her formal EEOC charge in September 2002. Other of the alleged incidents, such as the denial of a promised

larger office space, occurred well before she filed her charge.[8]
One alleged incident of retaliation through failure to promote
occurred in October 2004, after Harris had filed this action.

The Court cannot consider these additional claims because
Harris has failed to exhaust her administrative remedies.  "An
individual alleging discrimination in violation of Title VII must
first file an administrative charge with the EEOC within a
certain time of the alleged unlawful act."  Chacko v. Patuxent
Inst., 429 F.3d 505, 508 (4th Cir. 2005).  A plaintiff's
subsequent civil suit alleging violations of Title VII is limited
in scope to those claims made in the EEOC charge, claims that are
reasonably related to those made in the charge, and any charges
that naturally arise from an administrative investigation of the
charge.  Chacko, 429 F.3d at 506, 509; Bryant v. Bell Atl. Md.,
Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans, 80 F.3d at 962-
63; Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir.
1995).

Each alleged incident of discriminatory and retaliatory
conduct is a "discrete act" that constitutes a separate
actionable unlawful employment practice.  Nat'l R.R. Passenger
Corp. v. Morgan, 536 U.S. 101, 114 (2002).  Harris "can only file
a charge to cover discrete acts that 'occurred' within the
appropriate time period."  Id.  If she does not timely file an

---

[8]Harris claimed that DFAS racially discriminated against her
when it "reneged" on its promise to provide her a larger office
space in September 2001.

EEOC charge from the date of the discrete act, then she loses her ability to recover for it.  See id. at 110.[9]

Harris did not timely file EEOC charges concerning her additional claims.  Her EEOC charge addressed only her allegation that DFAS unlawfully discriminated against her when it failed to promote her in July 2002.  Harris concedes that she did not make any EEO claims other than her claim concerning the July 2002 denial of the promotion.  (Harris Dep. at 64, 67.)

Because Harris' additional claims of discriminatory and retaliatory conduct exceed the scope of her EEOC charge, they are not properly before this Court.  See Chacko, 429 F.3d at 506, 509; Bryant, 288 F.3d at 132-33.  This procedural bar applies even though Harris now claims that she was subjected to "an on-going pattern of discrimination and retaliation."  The "allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct."  Chacko, 429 F.3d at 509.

Finally, even if Harris had properly exhausted her administrative remedies for her additional claims, there is no

---

[9]Harris was required to initiate contact with an EEO Counselor within 45 days of either the date of the alleged discriminatory act or the effective date of alleged discriminatory personnel action.  See 29 C.F.R. § 1614.105(a)(1).  Unless an employee agrees to an extension, the counseling period lasts 30 days.  29 C.F.R. § 1614.105(d).  At the end of the counseling period, the counselor provides the employee with a written notice of the right to file a discrimination complaint.  Id.  The employee has 15 days from receipt of the notice to file the complaint with the appropriate governmental agency.  29 C.F.R. §§ 1614.106(a) and (b).

evidence in the record to support those claims.  Accordingly, Harris' additional claims cannot survive summary judgment.[10]

## IV.  Conclusion

For the reasons stated above, Rumsfeld's Motion for Summary Judgment is **GRANTED.**

Harris is **ADVISED** that she may appeal from this Opinion and Order to the Court of Appeals for the Fourth Circuit by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510.  The written notice of appeal must be received by the Clerk of this Court within sixty (60) days from the date of this Opinion and Order.  Failure to file a timely notice of appeal may result in the loss of the right to an appeal.  See Fed. R. App. P. 3 and 4.

The Clerk is hereby **DIRECTED** to forward a copy of this Opinion and Order to Harris and to all counsel of record.

---

[10]In her Brief in Response, Harris appears to claim that the alleged retaliatory acts created a "hostile work environment." However, nowhere in her EEOC charge or in her Complaint does Harris claim to have been subjected to a hostile work environment.  Accordingly, any claim for a hostile work environment is not properly before this Court.  Further, even if Harris had appropriately claimed that she was subjected to a hostile work environment, there is no evidence in the record to support such a claim.

**IT IS SO ORDERED**.


```
                            _____/s/_____
                                 Walter D. Kelley, Jr.
                            UNITED STATES DISTRICT JUDGE
```

Norfolk, Virginia
March 29, 2006